28  117
118  899

## DULIN vs. CALDWELL & CO.

A party is not entitled to an Injunction who shows that he has been negligent and careless in guarding his rights, and that if he has been subjected to loss it was because he had not attended to his interests in proper time.

In Equity, from Spalding county.  Decision by Judge CABANISS, at Chambers, 17th November, 1858.

Dulin vs. Caldwell & Co.

The facts of this case are sufficiently stated in the opinion pronounced by the court.

HAMMOND & SON, and FLOYD, for plaintiffs in error.

PEEPLES & CABANISS, and GIBSON, *contra.*

*By the Court.*—McDONALD J., delivering the opinion.

The error assigned in this case is on the refusal of the court below to order an injunction on the application of the plaintiff in error, enjoining the defendants from making an award made under a rule of reference, the judgment of the court, or from placing the same on the minutes, or from proceeding further with it until the further order of the court. The award was the *finale* of a litigation which had been pending for some time between the parties, growing out of transactions in cotton, and the refusal of the defendants to comply with certain alleged agreements, to furnish funds to plaintiff to lay out in cotton. The plaintiff filed a bill in chancery against the defendants for an account, &c., amended it three different times and filed a supplemental bill also. The defendants answered the original bill, and the first and second amendments and the supplemental bill, and John Caldwell, one of the defendants, answered the third amendment under an order of the court.

At the last May Term of the superior court of Spalding county, the cause was referred under a rule of court, the parties consenting thereto.

By the first and second amendments, the plaintiff prayed that the defendants might set forth an account of all the cotton he had shipped to them prior to 1850 on account of William H. White and others, and in answer to the first amendment, the plaintiff alleges that the defendants fraudulently refused to set forth the account, saying that from lapse of time they were unable to do so.

It was alleged further by the plaintiff, that the defendants, in answer to the original bill, said they were ready, at all times, to furnish him with copies of his accounts; that at the time of answering the original bill they had the books of account and plaintiff inferred from their refusal to set forth the account in their answers to the first and second amendments to that bill, that from some cause they were not in existence; that since the submission of the cause as aforesaid it has come to his knowledge, that the defendants have, all the time, had the books. The plaintiff further alleges, that notwithstanding the bill was exhibited for an account, John Caldwell put in his answer to the original bill, and to the first and second amendments, without referring to the books, which was unknown to the plaintiff until after he had agreed to the reference of the cause. The plaintiff sets forth, further, that the answers to the original bill and first and second amendments, contain several inaccuracies which John Caldwell refused to admit until the cause was submitted; that none of these things came to plaintiff's knowledge until the arbitrators had organized, and that it was by reason of their fraudulent concealment of them from him that he agreed to submit the cause to referees.

The plaintiff's bill further states that the arbitrators have made an award containing palpable errors and mistakes of both law and fact, to the prejudice of the plaintiff; that he could now compel them to produce the books and answer fully from them, and that under the direction of the court he could recover twenty-five hundred dollars. The plaintiff repeats, that for the foregoing reasons he entered into the rule of reference, and that defendants could have answered more fully if they had desired to do so. The bill further alleges that after the arbitration was organized, he was for the first time informed by the solicitors of the defendants that the defendant, Caldwell, had then the possession of the books, which in their an-

swer they had denied being able to control, or set out a transcript from.   He insists that it was by fraud and concealment of facts that he was induced to agree to the submission of the cause.

Under these several allegations the court refused to order the injunction prayed for.

We concur with the court below in the opinion that the injunction ought not to have been ordered.   The answers of the defendants were in court, and the plaintiff ought to have acquainted himself with their contents, and if they were not full answers to his bill and amendments, he ought to have excepted to them.   The chancellor would have compelled the annexation of the entire account called for by plaintiff, and would not have been satisfied with loose inferences from careless and insufficient answers.   It shows great laches on the part of the plaintiff not to have known that John Caldwell did not in his answers refer to the books of account at all.   A party who applies to a court of chancery for the aid of its extraordinary powers must show himself to have been vigilant and diligent.

But the plaintiff voluntarily agreed to this reference, and if he did it on account of his ignorance of the contents of the defendants' answers, and of their insufficiency, it was his own fault that he did not know them. He was informed, at the time of the arbitration, that the books were present in the possession of John Caldwell, who was in attendance.   He did not ask their production, nor did he request a postponement of the arbitration that he might have an opportunity to examine them.   On no principle can he under the allegations in this application, be allowed an injunction.   A party who asks the assistance of a court of equity, must show that he has been watchful of his rights and interests, and that he has not lost them by his own remissness and negligence.

Judgment affirmed.